FILED

2013 Dec-10  PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY C. TURK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.:** |
| | ) | |
| CAVALRY SPV I, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendant states as follows:

1.   This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

2.   The Plaintiff was sued for a debt Plaintiff did not owe.

3.   Defendant Cavalry SPV I, LLC never had any intention of offering any proof at trial.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

4.      Instead, the lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt she did not owe.

5.      This is the pattern of collection activity by Defendant Cavalry SPV I, LLC in its collection lawsuits in Alabama.

6.      The Plaintiff won the lawsuit.

## JURISDICTION

7.      Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.  All the actions described in this suit occurred in Alabama.

8.      Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

9.      Venue is proper as Plaintiff lives in Alabama, and the Defendant does business in this judicial district.

## PARTIES

10.    Plaintiff Shirley C. Turk (hereinafter "Plaintiff") is a natural person who is a resident of Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

11.    Defendant Cavalry SPV I, LLC, ("Defendant" or "Cavalry[2]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Delaware and has its principal place of business in New York.

12.    Defendant Cavalry, upon information and belief, allegedly buys defaulted consumer debt.

## BACKGROUND INFORMATION ON DEBT
## BUYER LAWSUITS  BY PRA IN ALABAMA

13.    This case represents a growing trend in the debt collection and credit reporting industries.

14.    First, a debt buyer such as Cavalry which claims to buy the Plaintiff's debt for pennies on the dollar will sue the Plaintiff in small claims or district court.

15.    While the debt buyer will claim that it has accurate records, this is not true.

---

[2] "Cavalry" means Cavalry directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

16.  The purchase agreement between the original creditor and the first debt buyer will state that there is no promise or representation as to the accuracy of the information sold to the first debt buyer.

17.  That first debt buyer cannot represent any greater quality to any subsequent debt buyer.

18.  In any event, one of the debt buyers, in this case Cavalry, will sue the Alabama consumer.

19.  Cavalry will hire a collection law firm to file the suit.

20.  Generally, most consumers default as they assume if a lawsuit has been filed, it must be legitimate.

21.  Occasionally, however, the consumer will file an answer and deny owing money.

22.  This causes a problem for Cavalry.

23.  The reason is that Cavalry knows that in virtually every case it will be unable (or unwilling) to prove that the consumer owes this debt to Cavalry.

24.  The debt buyer Cavalry has no intention of proving its case.

25.  No witness will be provided by Cavalry.

26.  No admissible evidence will be presented in court.

27. The entire model is based upon filing a high volume of cases, obtaining default judgments, and never having to make any effort to prove the allegations of the lawsuit.

28. When resistance is provided, such as an attorney defending a consumer, Cavalry knows the case will be lost as it has no evidence, no witness, and no intention of proving the case.

29. This is a reality that Cavalry prefers to keep secret from consumers in Alabama.

30. The case gets set for trial.

31. The judge rules in favor of the consumer at the trial as PRA offered no evidence.

32. Cavalry has 14 days to appeal from an adverse judgment in Alabama Small Claims or Alabama District Court.

33. Cavalry does not appeal.

34. Cavalry knows that losing its case means under Alabama law that the debt is not owed by the consumer to the debt buyer.

35. Since the debt is not owed, collection efforts must cease.

36. Since the debt is not owed, false credit reporting has occurred by Cavalry.

37. The factual allegations above relate directly to Defendant Cavalry concerning the filing of the lawsuit by Defendant Cavalry, its lack of any intent or ability

to prove its case against Plaintiff who does not owe Defendant Cavalry any money on this account, and Defendant Cavalry's collection activities against Plaintiff.

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

38.   Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

39.   Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

40.   Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

41.   15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)   There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)   Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)   **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)   Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and

instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)    It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## The Small Claims Complaint

42.    On July 8, 2013, Defendant Cavalry sued Plaintiff Turk in the District Court of Macon County, Alabama, with a case number of DV-2013-900032.

43.    This suit was filed by the Nadler & Associates, P.C. collection law firm.

44.    In this suit, Defendant Cavalry asserted it was the owner of a certain debt allegedly owed by Plaintiff.

45.    Defendant Cavalry alleged Plaintiff owed Cavalry $8,030.23.

46.    Defendant Cavalry also claimed court costs.

47.    Defendant Cavalry knows that Plaintiff has never done business with Defendant Cavalry.

48.    No mention was made in the lawsuit that whoever sold the alleged debt to Cavalry disclaimed the accuracy of the records.

49.    Given this lawsuit, Defendant Cavalry would be expected to have an intention of proving its case.

7

50. No such intention existed.

51. Defendant Cavalry never intended to offer one shred of evidence to prove its case.

52. This lawsuit, and the dozens of other Alabama lawsuits filed by Cavalry every year, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Cavalry cannot and will not prove it has any right to collect on.

53. Another intention of Defendant Cavalry was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

54. Defendant Cavalry knew Plaintiff did not owe the debt sued on.

55. Defendant Cavalry made numerous misrepresentations and false statements in the lawsuit.

56. Defendant Cavalry misrepresented that a debt was owed – none was owed by Plaintiff to Defendant Cavalry.

57. Defendant Cavalry misrepresented the amount owed as Plaintiff owed Defendant Cavalry nothing on this account.

58.  Defendant Cavalry misrepresented that Defendant Cavalry had standing and the right to bring the lawsuit when Defendant Cavalry did not have standing and did not have the right to bring the lawsuit.

59.  Defendant Cavalry did not own the debt at the time the lawsuit was filed.

60.  Defendant Cavalry did not own the debt at any time the lawsuit was pending.

61.  Defendant Cavalry misrepresented that it intended to prove its case when Defendant Cavalry had no intent to prove its case.

62.  Defendant Cavalry misrepresented that it intended to offer any evidence in the case when Defendant Cavalry had no intention of offering any evidence in the case.

63.  This suit was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant Cavalry in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers.

64.  Additionally, the suit was brought after the statute of limitations had expired and Defendant Cavalry knew this.

65.  Plaintiff even told Defendant Cavalry the statute of limitations had expired but Defendant Cavalry refused to heed this warning in Plaintiff's Answer.

## Plaintiff Answers The Cavalry Lawsuit

66.  Plaintiff did not and does not owe the debt.

67. Plaintiff filed an Answer denying the allegations of Defendant Cavalry.

68. The Answer was filed on August 5, 2013 by Plaintiff.

69. Defendant Cavalry received a copy of this denial.

70. Defendant Cavalry understood that Plaintiff was refusing to pay on this debt.

71. Defendant Cavalry understood that Plaintiff disputed this debt.

72. Defendant Cavalry knew Plaintiff did not owe this debt.

73. Defendant Cavalry made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Cavalry knew that there was no merit to the case, but Defendant Cavalry sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Cavalry.

### The Judge Sets The Cavalry Lawsuit For Trial

74. The state court set the case for trial.

75. Notice was sent to Defendant Cavalry and Plaintiff.

76. At all times Plaintiff was prepared for trial.

77. At all times Defendant Cavalry was unprepared for trial.

78. Defendant Cavalry knew that with its intention to never prove the case, and with a represented Plaintiff, the game was over.

79. Defendant Cavalry provided no proof to its collection counsel that Defendant Cavalry owned the debt.

80. Defendant Cavalry provided no proof to its collection counsel that Plaintiff owed Defendant Cavalry the debt.

81. Defendant Cavalry provided no evidence and no witness to its collection counsel at any time prior to the trial and up through the end of the trial.

### Cavalry Loses The Collection Case

82. On August 29, 2013,  District Court Judge Aubrey Ford, Jr. entered a judgment for Plaintiff Turk.

83. Defendant Cavalry offered no proof and never attempted to offer any proof that it was entitled to a verdict against Plaintiff.

84. As Defendant Cavalry supplied its collection counsel with no proof and no witnesses, Defendant Cavalry (through collection counsel) had no proof or evidence to even attempt to offer into evidence in the trial of this case.

85. Defendant Cavalry did not have at trial any employee or agent of Defendant Cavalry to present evidence or testimony.

86. Defendant Cavalry did not question any employee or agent of Defendant Cavalry at trial in this case.

87. Defendant Cavalry did not have any witness of any type to present evidence or testimony.

88. Defendant Cavalry did not question any witness at trial in this case.

89.  Defendant Cavalry did not even attempt to submit any document into evidence at trial in this case.

90.  No evidence of any type was submitted by Defendant Cavalry in the trial of this case.

91.  Judge Aubrey Ford, Jr. ruled in favor of Plaintiff Turk.

92.  This ended the case Defendant Cavalry filed against Plaintiff.

## Remaining Factual Allegations Against Defendant Cavalry

93.  Defendant Cavalry is not the owner of this alleged debt.

94.  Defendant Cavalry has collected against Plaintiff when Plaintiff did not owe any money to Defendant Cavalry on this account.

95.  Defendant Cavalry has misrepresented the debt to Plaintiff.

96.  This includes the amount of the debt as none is owed.

97.  This includes the legal status of the debt as none is owed.

98.  This includes false credit reporting on Plaintiff by Defendant Cavalry.

99.  This includes the false statement that Defendant Cavalry intended to offer any proof in the case when it had no such intention.

100.  Defendant Cavalry has threatened to take action it knows is illegal for Defendant Cavalry to take.

101.  This includes proceeding to trial when Defendant Cavalry knew at the time and continues to know that it has  no right to proceed to trial on a debt it does not own and that Plaintiff does not owe.

102.  It also includes suing after the statute of limitations has expired which violates the FDCPA.

103.  Defendant Cavalry knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed by Plaintiff, the filing of a lawsuit when Defendant Cavalry did not own the debt, by false credit reporting, by misrepresenting numerous facts in the lawsuit, by threatening to take Plaintiff's property and wages, and by all other wrongful acts described in this Complaint.

104.  Plaintiff did not and does not owe this money to Defendant Cavalry.

105.  The debt being collected is a consumer debt as defined by the FDCPA.

106.  Plaintiff is a "consumer" as defined by the FDCPA.

107.  Defendant Cavalry is a "debt collector" as defined by the FDCPA.

108.  Defendant Cavalry refused to give Plaintiff all required notifications and disclosures under the FDCPA.

109. Defendant Cavalry has been repeatedly sued in Alabama for filing suits with no basis to do so.

110. Defendant Cavalry has been repeatedly sued in Alabama for filing suits with no intention of proving the allegations in the lawsuits.

111. Defendant Cavalry has been repeatedly sued in Alabama for false credit reporting on debts not owed by Alabama consumers.

112. Defendant Cavalry has full knowledge of what it is doing by filing bogus lawsuits and illegal collection activities.

113. Defendant Cavalry knows that it is suing Alabama consumers who do not owe the debts being sued upon.

114. Defendant Cavalry knows that it is suing Alabama consumers on debts that Defendant Cavalry does not own.

115. Defendant Cavalry has calculated that the most profitable way to conduct these suits is to file them with no investigation on the merits of the suit, to provide no evidence to collection counsel, to provide no valid evidence for any court to consider, and to use deception and intimidation to force Alabama consumers to pay for debts not owed or to obtain default or consent judgments against the Alabama consumers.

116. Defendant Cavalry files numerous lawsuits with no intention of proving those lawsuits.

117. Defendant Cavalry is counting on the fact that many Alabama consumers will not answer and so default judgments will be entered.

118. This type of "scattershot" litigation strategy is improper, deceptive, and abusive.

119. Defendant Cavalry knows that its "scattershot litigation" is improper but it has decided that this is the most effective way to obtain money from Alabama consumers who do not owe the money to Defendant Cavalry.

120. The conduct of the Defendant Cavalry has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

121. It is a practice of the Defendant Cavalry to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

122. Defendant Cavalry knows its conduct is wrong but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

123. All actions taken by employees, agents, servants, or representatives of any type for the Defendant Cavalry were taken in the line and scope of such individuals' employment, agency or representation.

124. This includes collection counsel for Defendant Cavalry who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Cavalry.

125. All actions taken by the Defendant Cavalry were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

126. Defendant Cavalry has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Cavalry is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

127. Defendant Cavalry is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

## SUMMARY

128. All of the above-described collection activities made to Plaintiff by Defendant Cavalry were made in violation of the FDCPA, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

129. The above-detailed conduct by the Defendant Cavalry of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

130. This series of abusive collection actions by Defendant Cavalry caused Plaintiff stress and anguish.

131. Defendant Cavalry 's attempts to collect this debt from Plaintiff and refusal to stop violating the law is an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

132. Plaintiff has suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## NEGLIGENT AND WANTON HIRING AND SUPERVISION

133.   Defendant Cavalry negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

134.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

135.   The acts and omissions of Defendant Cavalry constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

136.   As a result of Defendant Cavalry's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Cavalry.

## COUNT II.

## INVASION OF PRIVACY

137.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

138. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Cavalry violated Alabama state law as described in this Complaint.

139. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

140. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

141. Defendant Cavalry intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns

or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

142. Defendant Cavalry intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

143. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

144. The conduct of Defendant Cavalry, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Cavalry which occurred in a way that would be highly offensive to a reasonable person in that position.

145. This conduct includes the filing of a public lawsuit against Plaintiff.

146. A public lawsuit that has no merit and Defendant Cavalry knew at the time it filed the lawsuit that it had no merit.

147. Defendant Cavalry has continued to publicly state through credit reporting that Plaintiff owes or owed the debt to Defendant Cavalry when Defendant Cavalry knows this is untrue.

148. All of the other wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Cavalry in its campaign of

improper debt collection which has led to the Plaintiff's privacy being invaded.

149. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Cavalry.

150. All acts of Defendant Cavalry were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Cavalry is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

151. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

152. Defendant Cavalry's collectors are allowed and encouraged to break the law in order to collect debts.

153. This includes all of the violations of the law described in this Complaint.

154. Defendant Cavalry is aware of the wrongful conduct of its collectors.

155. Defendant Cavalry negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Cavalry is thereby

responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV.

## WANTON, MALICIOUS, AND INTENTIONAL CONDUCT

156. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

157. Defendant Cavalry had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

158. Defendant Cavalry had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

159. Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

160. Defendant Cavalry violated all of the duties Defendant Cavalry had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

161. It was foreseeable, and Defendant Cavalry did in fact foresee it, the actions of Defendant Cavalry would lead and did lead to the exact type of harm suffered by Plaintiff.

162. Defendant Cavalry acted with malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

163. Defendant Cavalry invaded the privacy of Plaintiff as set forth in Alabama law.

164. Such malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

165. As a result of this conduct, action, and inaction of Defendant Cavalry, Plaintiff has suffered damages as set forth in this Complaint.

## COUNT V

### MALICIOUS PROSECUTION AND ABUSE OF PROCESS AGAINST DEFENDANT PRA

166. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

167. Defendant Cavalry instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so.

168. Defendant Cavalry filed the lawsuit with no intention of ever proving its case.

169. Defendant Cavalry continued to prosecute the case with no intention of ever proving its case.

170. Defendant Cavalry filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.

171. Defendant Cavalry instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Cavalry money on a non-existent debt.

172. The malicious plan of Defendant Cavalry included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and/or seizures of property and the Defendant Cavalry tried to accomplish this by the Defendant Cavalry's malicious and abusive actions.

173. Throughout the entire illegal lawsuit against Plaintiff, Defendant Cavalry knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Cavalry knew it was not entitled to receive.

174. The litigation against Plaintiff filed by Defendant Cavalry eventually resulted in adjudication in favor of Plaintiff.

175.  The illegal and improper actions of the Defendant Cavalry constitute malicious prosecution and abuse of process.

176.  This is the pattern and practice of Defendant Cavalry – to file suits with no basis and no intention of ever proving the case in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Cavalry.

177.  The Plaintiff suffered past and future emotional distress and monetary loss as a direct and proximate result of Defendant Cavalry's abuse of process and malicious prosecution.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE**

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Cavalry SPV 1, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104